UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA MCCOLM,

    Plaintiff(s),

    v.

SAN FRANCISCO HOUSING AUTHORITY, et al.,

    Defendant(s).

_____/

No. C 02-5810 PJH

**ORDER RE DEFENDANT'S MOTION FOR ORDER PROHIBITING PLAINTIFF FROM ENGAGING IN VERBALLY ABUSIVE CONDUCT AND FOR MONETARY SANCTIONS AND PLAINTIFF'S COUNTER MOTION**

On December 6, 2006, a hearing was held on defendant A-1 Security's motion to prohibit pro per plaintiff Patricia McColm ("McColm") from engaging in verbally abusive conduct and for monetary sanctions. Defendant appeared through its counsel, Guy Stilson ("Stilson"), from Low, Ball & Lynch ("LBL"). Plaintiff McColm appeared on her own behalf.

Defendant's motion is based on two separate incidents in which McColm was verbally abusive to staff members of LBL. In support of its motion, defendant submitted declarations from counsel and from the LBL staff members involved. McColm submitted her own declaration in opposition. The two incidents occurred on August 17 and September 22, 2006.

According to the declarations, on August 17, 2006, McColm called Stilson on his cell phone about her request for an extension on a discovery deadline. Stilson was in a client meeting, and advised McColm that he would have to call her back later that afternoon. McColm then called Stilson's office and berated his secretary and his receptionist.

McColm called the LBL receptionist, who transferred McColm to Stilson's voicemail. McColm had difficulty leaving a message, and called the receptionist back, yelling at her regarding the inadequacies of LBL's voicemail system. After much screaming, McColm allowed the receptionist to transfer her to Mr. Stilson's secretary. During her conversation with Mr. Stilson's secretary, McColm screamed at her very loudly, repeatedly used the word "fuck," and called the secretary a "fucking lying bitch." McColm then called the receptionist back, screaming so loudly at her that the receptionist had to hold the phone away because McColm's voice was hurting her ears. During this third "conversation" with the receptionist, McColm called her a "bitch," referred to Stilson's secretary as a "fucking liar," and again used the word "fuck" repeatedly.

A couple of hours later on August 17, 2006, without talking to his office and unaware of McColm's abusive behavior, Stilson called McColm back from his cell phone. Subsequently, Stilson returned to his office and learned of McColm's abusive conduct. Both the LBL receptionist and Stilson's secretary attested that they felt victimized and abused by McColm's behavior. According to Stilson, they were so upset by McColm's behavior, that they were inattentive and unproductive for the rest of the day. He wrote McColm a letter that same day advising her that he would not tolerate her use of foul and abusive language with his staff, and that he would bring it to the court's attention if it occurred again.

Approximately one month later, on September 22, 2006, McColm again called LBL's office for Stilson, and spoke to the same LBL receptionist, who advised her that Stilson was at lunch. McColm then repeatedly called the receptionist, who transferred her to Stilson's secretary. In her conversations with the receptionist, McColm again screamed loud enough to hurt her ears, and told the receptionist that she was recording the conversation because she (the receptionist) was incompetent. McColm also again used the word "fuck" repeatedly. McColm behaved in a similar manner in her conversations that day with Stilson's secretary.

Upon learning of McColm's behavior, Stilson wrote her a letter that same day and advised her that she had been warned, and that he was bringing her abusive conduct to the court's attention.

In her declaration, McColm complains about the time delay between the incidents and the filing of the motion, that she received no prior notice of Stilson's intent to bring this motion, and that Stilson violated his obligation to meet and confer before bringing this motion. McColm generally denies being verbally abusive to LBL staff. She declares that she did not yell or scream, but rather used an old radio phone with a speaker mechanism that is inconsistent in volume, and that Stilson and his staff have simply "misconstrue[d] the speaker phone to suit their own improper purposes."

With regard to the specific allegation that she engaged in name calling and the repeated use of profanity, McColm does not address the accusation explicitly, but does attest that the declarations of LBL staff are "wrong and retaliatory." She additionally accuses LBL staff of rudeness toward her and "other misconduct including a snide insult by draw out of the word madam." At the hearing when asked directly by the court whether she called the secretary or receptionist a "bitch," she denied doing so, but admitted that she called them incompetent.

In his reply declaration, Stilson declared that he had had numerous conversations with McColm over the phone and had detected no defect in the phone system, rather, the volume, pitch and speed of her speech tended to increase in response to something he said with which she disagreed or did not like. In his seventeen years of practice, Stilson cannot recall ever bringing a motion against a pro per litigant over this type of behavior.

In response to defendant's motion, McColm filed an opposition and a "counter-motion" for sanctions.

## DISCUSSION

Like Mr. Stilson, the court has not in almost sixteen years been called upon to rule on motions such as those presented here. Even though defendant relies on inapplicable

3

**United States District Court**
For the Northern District of California

1   authority and plaintiff's motion is procedurally defective, the allegations are sufficiently

2   serious and detrimental to the goals of the federal and local rules, that the underlying

3   conduct must be addressed as a matter of sound case management.

4          Defendant brings its motion pursuant to Civil Local Rule 11-4(a)(4), which requires

5   that attorneys practice before the court with care and decorum; Fed. R. Civ. P. 37, which

6   authorizes sanctions against attorneys and parties for violation of discovery orders and

7   engaging in abusive discovery tactics; Fed. R. Civ. P. 41(b), which provides for the

8   involuntary dismissal of an action if a plaintiff fails to prosecute or violates a court order;  28

9   United States Code § 1927, which permits a court to sanction an attorney who  multiplies

10  the proceedings in any case unreasonably and vexatiously; and pursuant to the court's

11  inherent authority.  *See, e.g., Fink v. Gomez*, 239 F.3d 989, 991-94 (9th Cir. 2001)

12  (affirming district court's imposition of sanctions under its inherent powers where attorney's

13  reckless conduct was combined with additional factors, like frivolousness, harassment, or

14  improper purpose).

15         With the exception of inherent authority, the court is at a loss as to how the other

16  provisions apply to the subject of defendant's motion.  Moreover, as McColm points out,

17  several of the provisions apply only to attorneys.  While McColm consistently identifies

18  herself as a "J.D." on her court filings, the court has not been advised whether she is

19  admitted to practice either before this court or in California, and the state bar's website

20  does not show that she has been admitted to practice in California.

21         McColm's "counter-motion" is even more bereft of authority.  McColm purports to

22  bring her own motion for sanctions based on defendant's filing of its frivolous motion for

23  sanctions, pursuant to Fed. R. Civ. P. 11.  The local rules, however, do not provide for

24  "counter-motions" but instead require that all motions be filed on a 35-day briefing

25  schedule.  More importantly, however, McColm did not comply with the longstanding

26  procedural requirements for bringing a Rule 11 motion.  Specifically, a motion for sanctions

27  pursuant to Rule 11 may **only** be brought as a separate motion and cannot be simply

28

4

included in an opposition to another motion **and** it must be served on opposing counsel 21 days **before** it is filed with the court in order to afford the opposing party an opportunity to withdraw or correct the offending filing. This in commonly referred to as the "safe-harbor" provision. Given the length of the court's calendar and the amount of time afforded to McColm to present her arguments to the court, no time was available or warranted for separate arguments on her procedurally defective motion.

## FINDINGS

Based on the declarations submitted by both parties and McColm's comments at the hearing (defendant essentially rested on the papers), the court is persuaded that McColm raised her voice and used profanity and abusive language when speaking to LBL staff on the two occasions at issue. The court is also persuaded that McColm did so because she was not treated by them the way she believed she should have been treated. Nonetheless, a reasonably held perception, which the court does not find McColm's was, that one is being treated rudely in a professional setting, does not justify the use of profanity and a raised tone such as that engaged in by McColm. If the parties are ever to complete discovery, this conduct must be addressed, and is, as follows:

## ORDER

Both motions for sanctions are DENIED. However, the following ground rules apply immediately to the conduct of remaining discovery:

1. McColm shall discontinue the use of the speaker feature on her phone if she is unable to control the volume;
2. McColm's use of profanity and name-calling will not be tolerated and must cease immediately;
3. Going forward, McColm is permitted to communicate only with Stilson directly or with his voicemail, and is no longer permitted to communicate with LBL staff;
4. To the extent that LBL staff must communicate with McColm in order to

    transfer her to voicemail, they may and should simply hang up on McColm if she yells or uses abusive language;

5. Should this occur, McColm will be prohibited from contacting LBL telephonically and will instead be required to communicate with Stilson in writing or by mail or fax, but NOT email;

6. No extensions of deadlines set by the court will be permitted to accommodate the increased time that it will take plaintiff to communicate by means other than telephone;

7. Stilson shall take McColm's calls and return her voicemail messages, but he should keep track of all future abusive language and incidents;

8. Any future violations of this order by McColm will be subject to additional sanctions;

9. As requested by McColm, required meet and confer sessions need not be conducted in person.

As a final comment, the court notes that McColm's conduct at the December 6, 2006 hearing was consistent with the conduct complained of by defendant in this motion. After the entire 30 minutes allotted for this hearing was used by McColm, the court issued the order contained above and to which McColm took exception. She thereafter raised her voice and refused to leave the courtroom until the courtroom deputy was requested to summon the Marshal. McColm did manage to exit the courtroom before the court security officer arrived, but remained in the corridor for some time. Her voice was audible in the courtroom resulting in a distraction to the court and the litigants that followed.

The court's extremely heavy caseload simply does not afford the time that this motion has taken. No party, attorney or employees affiliated with them should have to put up with being cursed and called names in order to accomplish their daily duties. The court will not indulge this behavior by McColm or anyone else litigating a case on its docket. The staff of the undersigned judge have all been instructed to hang up on McColm if she yells at

6

them or uses foul and abusive language toward them.

Dated: December 11, 2006

**IT IS SO ORDERED.**

_____
PHYLLIS J. HAMILTON
United States District Judge