1
2
3
4              UNITED STATES DISTRICT COURT
5              NORTHERN DISTRICT OF CALIFORNIA
6
7    PATRICIA A. MCCOLM,
8              Plaintiff,                    No. C 02-5810 PJH
9         v.                                 **ORDER GRANTING DEFENDANTS'
                                             MOTIONS FOR SUMMARY JUDGMENT
10                                           AND MOTIONS TO DISMISS**
     SAN FRANCISCO HOUSING
11   AUTHORITY, et al.
12             Defendants.
     _____/
13

14        On May 23, 2007, defendants' motions for summary judgment and motions to

15   dismiss came on for hearing before the court.  Defendants San Francisco Housing

16   Authority ("SFHA"), Joretha Abrahams, Ignacius Lenore, Roberto Lechuga, Naja Boyd, Jim

17   Williams, Michael Roetzer, and Greg Fortner, and specially appearing defendants Tony

18   Ucciferri and Beverly Marshall, appeared through their counsel, Colin H. Jewell, of

19   Walsworth, Franklin, Bevins & McCall, LLP.  Defendants Paula Jones individually and d/b/a

20   A-1 Security ("A-1"), and Henry Johnson, appeared through their counsel, Guy W. Stilson,

21   of Low, Ball & Lynch.  Pro se plaintiff, Patricia McColm, failed to file any opposition to the

22   motions, and also failed to appear at the hearing.  Having read the papers filed in

23   conjunction with the motions and carefully considered the arguments and the relevant legal

24   authority, the court GRANTS defendants' motions for summary judgment and motions to

25   dismiss for the reasons that follow.

26                              **BACKGROUND**

27   **A.    Procedural History**

28        It has been nearly four and one-half years since McColm filed the complaint in this

     case on December 12, 2002, and until the recent May 23, 2007 hearing, the court had

1   heard no dispositive motions. Instead, what followed plaintiff's filing of this case, literally up

2   until the day before the hearing on the instant motions, has been numerous requests for

3   extensions of time, continuances, and stays by McColm.  Rather than reiterate the lengthy

4   history of the requests and related rulings, which are set forth in this court's recent May 8,

5   2007, and May 22, 2007 orders denying plaintiff's last minute requests for stays, the court

6   will instead incorporate by reference those two orders.  It bears mentioning, though, that

7   throughout the course of this case, the court has granted plaintiff no fewer than eighteen

8   accommodations, in addition to the numerous accommodations granted plaintiff by

9   defendants as well.

10          Although it will not set forth as comprehensive a history as that included in the

11   above-referenced orders, the court nevertheless sets forth such history as is necessary to

12   provide a context for the instant motions.   It took nearly three and one-half years for

13   plaintiff to serve the defendants she has chosen to sue, and still, as of the date of this

14   order, several remain unserved.  More than four years ago, on May 8, 2003, this court

15   issued an order to show cause why plaintiff's claims should not be dismissed for failure to

16   serve the defendants.  Plaintiff was ordered to file a responsive written declaration no later

17   than May 30, 2003.  On June 2, 2003, the court granted plaintiff's request for a sixty-day

18   extension of time to serve all defendants and discharged the prior OSC, based on plaintiff's

19   medical condition.  On August 13, 2003, the court again granted plaintiff a thirty-day

20   extension of time to serve all defendants, again based on plaintiff's medical condition.  The

21   court, however, advised plaintiff that was the final extension, and that any parties remaining

22   unserved would be dismissed in thirty days, which would have been September 12, 2003.

23          Meanwhile, on August 27, 2003, defendant SFHA filed a Rule 12(b) motion to

24   dismiss.  Plaintiff then requested a six-month extension to respond to SFHA's motion and

25   to take jurisdictional discovery, based on her limitations due to her disability and due to an

26   upcoming trial in state court.  On September 17, 2003, the court denied plaintiff's request

27   for discovery, but granted a two-month extension of the motion hearing date and related

28   deadlines, and set a December 10, 2003 hearing date on the SFHA's motion to dismiss.  In

1  the meantime, on October 2, 2003, defendant A-1 and several individual defendants moved

2  to dismiss plaintiff's claims under Rule 12(b).

3       Again, on November 7, 2003, plaintiff moved to continue the December 10, 2003

4  hearing date due to conflicts with other state court matters and with problems involving her

5  elderly father.  The court denied McColm's request to move the hearing date, but granted

6  her an extension of time to file her opposition brief.  Subsequently, on November 19, 2003,

7  plaintiff filed a first amended complaint ("FAC"), and on November 20, 2003, the court

8  denied all defendants' motions to dismiss as moot, and ordered that they respond to

9  plaintiff's FAC no later than December 22, 2003.  Those defendants who had been served

10  at the time answered the FAC on December 12 and 19, 2003.

11       However, as of December 2003, in part because service of all defendants had not

12  been accomplished (and still to this date has not), a case management conference was not

13  automatically scheduled as it normally would have been.  While the court was waiting for

14  service on the remaining defendants, the case fell through the cracks and two years of

15  inactivity ensued.

16       When the inactivity came to the court's attention, on January 5, 2006, the court

17  ordered the parties to file a joint statement regarding the status of the case.  It took more

18  than three and one-half months, however, before the court was able to hold a case

19  management conference ("CMC") due to plaintiff's unavailability and numerous requests for

20  extensions based on her disabilities, her medical condition, and the health of family

21  members.  At the April 21, 2006 CMC, the court set a number of deadlines and ordered the

22  opening of formal discovery.  In light of plaintiff's medical condition, the court afforded her

23  nearly three months - until July 20, 2006 - to respond to defendants' discovery requests

24  which would normally be due under the federal rules within thirty days.  Additionally, as it

25  appeared that some defendants had still not been served with either the original or

26  amended complaint, the court ordered that within 120 days, plaintiff must move for the

27  default of any defendants she believed were properly served but who had not appeared,

28  and further that any defendants remaining unserved would be dismissed, as well as any

non-responding defendants whose default had not been sought.  Plaintiff requested the

default of several defendants, and her request was granted in part and declined in part by the Clerk.[1]  On September 6, 2006, several individual defendants, one whose default had been declined and the other defendants whose default had not been sought, moved for their dismissal.  McColm filed no opposition and their motion was granted.

On April 6, 2007, in an order which set a consolidated briefing schedule and hearing date on two separate summary judgment motions filed by defendants, the court *sua sponte* continued a May 2, 2007 hearing date on defendants' motions for summary judgment to May 23, 2007 in order to afford plaintiff additional time to respond to both of the motions. Later that same day, the court received plaintiff's April 5, 2007 letter requesting a stay of all proceedings due to the fact that her father was hospitalized with a terminal medical condition.  In its April 9, 2007 order, the court granted in part and denied in part plaintiff's request.  It noted that it was not unsympathetic to plaintiff's situation, but that given the numerous extensions, the imminent trial date of July 30, 2007, and the court's need to manage its docket, the accommodation could not be without limits.  In light of plaintiff's request, it continued an April 25, 2007 hearing date on SFHA's pending motion to dismiss by nearly 30 days to May 23, 2007, to be heard at the same time as the motions for summary judgment, and also continued the corresponding briefing schedule.  The court, however, warned both parties that no further continuances would or could be granted in view of the court's unavailability during most of the month of June 2007.

On May 2, 2007, plaintiff's oppositions to defendants' motions for summary judgment and motion to dismiss the case were due pursuant to this court's April 9, 2007 order.  Plaintiff failed to oppose the motions, and instead at the last minute filed another emergency request to stay the proceedings based on her father's medical condition, family crises, and her severe bronchitis, and also filed a motion to disqualify the magistrate judge to whom discovery matters had been referred.  Defendants opposed the motions, and on May 8, 2007, this court denied plaintiff's motions in the above-referenced nine-page order that set forth the long history of extensions and continuances in this case.

---

[1]In the May 8, 2007 order, the court inadvertently overlooked the entry of a clerk's default against three tenants who had apparently been served but did not answer.

1    In spite of the May 8, 2007 order, on May 21, 2007, plaintiff again filed another

2 motion to stay all proceedings, including the May 23, 2007 hearing on the instant motions,

3 which this court denied on May 22, 2007.

4 **B.    First Amended Complaint**

5    **1.    Parties and Claims**

6    McColm's FAC names as defendants the SFHA and the San Francisco Housing

7 Commission (SFHC), along with eleven SFHA employees, including Joretha Abrahams,

8 Ignacius Lenore, Roberto Lechuga, Beverly Marshall, Naja Boyd, Jim Williams, Michael

9 Roetzer, Ronnie Davis, Greg Fortner, Valerie Stathem, and Tony Ucciferri (substituted in as

10 one of the Doe defendants).  Of the eleven SFHA employees, seven have appeared in the

11 lawsuit and are represented by SFHA's attorneys in the pending motions:  Joretha

12 Abrahams, Ignacius Lenore, Roberto Lechuga, Naja Boyd, Jim Williams, Michael Roetzer,

13 and Greg Fortner.   SFHA moves to dismiss two of the other four additional defendants,

14 Beverly Marshall and Tony Ucciferri, under Rule 4(m).  Another two of the named SFHA

15 individual defendants, Valerie Stathem and Ronnie Davis, appear to have never been

16 served, as there are no executed summonses in the court's record.

17    McColm also names as defendants Paula Jones individually and d/b/a A-1 Security,

18 and A-1 Security guards Henry Johnson, Patrick, and Reed.  The court dismissed Patrick

19 and Reed under Rule 4(m) on November 30, 2006.

20    McColm also names as defendants several SFHA tenants, including two Does

21 (Does 1-2), and tenants Gracie Smith, Mr. Smith, and David Gonzalez.  The Clerk entered

22 default as to the latter three on August 25, 2006.

23    McColm also names Does 4-150.

24    In sum, the following defendants have appeared in the case: "SFHA defendants,"

25 which include SFHA, SFHC, Joretha Abrahams, Ignacius Lenore, Roberto Lechuga, Naja

26 Boyd, Jim Williams, Michael Roetzer, and Greg Fortner; and "A-1 defendants," which

27 include Paula Jones individually and d/b/a A-1 Security, and former A-1 security guard,

28 Henry Johnson.  In this order, the court refers collectively to both groups of defendants as

"defendants."  "A-1" refers to all defendants in the A-1 group as set forth above, including the individual defendants, and the same is the case for "SFHA," unless otherwise specified.

McColm's FAC alleges ten clearly identified claims for relief, and in addition, another ten state law tort claims that are lumped together under one heading entitled "actionable torts under state law."  The first ten claims include:  (1) racial and disability discrimination, interference, and harassment under the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 32 U.S.C. §§ 3601-19, (2) discrimination based on disability and retaliation for complaints of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12203 et seq.; (3) violation of the Privacy Act of 1984 and California's Information Practices Act; (4) racial and disability discrimination and retaliation for exercise of her First Amendment rights under 42 U.S.C. § 1983; (5) violation of the Rehabilitation Act of 1973, section 504; (6) "violation of Code of Federal Regulation, HUD" (no specific regulations cited); (7) breach of landlord's duty to warn under California law; (8) violation of California's Unruh Act, §§ 51-52 et seq.; (9) "breach of contract and covenant of good faith and fair dealing and occupancy policy"; and (10) negligent hiring, training, and supervision of employees.

McColm's "grab bag" of ten state law tort claims, include:  (11) negligence and gross negligence; (12) violation of California Bus. & Prof. Code § 17200 for unfair and fraudulent business practices; (13) fraud; (14) intentional and negligent emotional distress; (15) invasion of privacy; (16) spoliation of evidence; (17) assault and battery; (18) property damage; (19) violation of California Civil Code §§ 1950 et seq.; and (20) civil conspiracy. McColm seeks both damages and injunctive relief.

**2.**    **Description of FAC and Factual Allegations Therein**

McColm has not alleged specific claims against specific defendants, but instead attempts to sweep all defendants into all claims in the lawsuit.  The first six pages of her FAC describe the defendants.  The following nineteen pages, which include paragraphs 29-100, set forth the facts underlying the claims.  The next five pages include the above-referenced claims.  For purposes of all of the claims, she incorporates by reference the preceding paragraphs (100 paragraphs for the first claim, and up to 128 paragraphs by the

6

1   time she gets to the "grab bag" of state law tort claims).  However, McColm fails to specify

2   which facts are relevant to each of her twenty claims, and also fails to designate which

3   claims are being asserted against which defendants.  This is in spite of the fact that not all

4   claims can be asserted against all defendants, e.g., tenants cannot be liable for some of

5   the claims asserted against the SFHA, nor can the private security service, A-1.

6        Review of the FAC reveals that the case concerns alleged racial and disability

7   discrimination, harassment, and mistreatment McColm claims she suffered while living in

8   public housing through Section 8 of the United States Housing Act of 1937, 42 U.S.C. §

9   1437, at Sala Burton Manor ("Sala Burton") at 430 Turk Street in San Francisco, CA.

10  McColm lived in this housing as an SFHA tenant from September 1999 to July 2002.

11       During that time, McColm contends that the SFHA and its employees discriminated

12  against and harassed her based on her race and disabilities.  She asserts that the majority

13  of Sala Burton's residents and SFHA management and employees are African American,

14  and that because she's white and disabled, she suffered verbal abuse, racial slurs, threats,

15  assaults, unlawful entry into her unit, theft, lack of ventilation, smoking and drug use, and

16  vandalism.  She alleges that some of the mistreatment took place by SFHA employees,

17  and that as for the residents, SFHA failed to adequately address other tenants'

18  mistreatment even though she complained, and even encouraged residents to

19  "orchestrat[e] a campaign of defamatory representations and police reports."

20       In terms of A-1, McColm alleges that the company and its employees entered into a

21  conspiracy with the SFHA and its employees to mistreat, harass, and discriminate against

22  her.  The mistreatment allegedly consisted of "closing of windows," banging on McColm's

23  door, putting glue in her locks, unlawful entry, refusal to remove persons threatening her,

24  inflicting asthma, failing to maintain clean and sanitary premises, and failing to stop

25  nuisance and harassment of McColm by other tenants.  She contends that SFHA

26  encouraged or solicited A-1 guards to falsify incident reports and police complaints about

27  her, including police reports.  As for A-1 guard Johnson, McColm contends that he

28  harassed her with racially charged language "because she was white," and then wrote a

false report accusing her of making racial slurs against him based on his African American

1    race.  McColm further contends that she asked Paula Jones personally and in writing to

2    control her employees' conduct, but that Jones failed to do so, and instead allowed the

3    conduct to continue "with her blessing."

4         As for the alleged racial discrimination and harassment, which seem to comprise the

5    majority of the FAC allegations, McColm alleges that the SFHA refused to provide her with

6    a wheelchair-accessible unit based on her race.   She asserts in her FAC that she had

7    been waiting for a "disability unit" since the inception of her contract with SFHA, but that

8    SFHA gave African Americans preferential treatment in assigning such units. She also

9    alleges that SFHA employees instructed African American security guards not to take

10   complaints from her, but to instead "write her up" in an attempt to have her evicted.

11   McColm alleges that whenever a report was written (but does not specify who was writing

12   the report, presumably A-1 or SFHA), it was slanted to misrepresent the "white victim's"

13   view in favor of the African American perpetrator.  She further contends that SFHA

14   employee, Beverly Marshall, constituted a "token white" employee, who carried out the

15   orders of her African American SFHA superiors to discriminate against white residents.

16        McColm also contends that she complained about a number of problems at Sala

17   Burton, including poor ventilation, criminal activity, food odors, noise, and defective

18   elevators and entry doors, but that the SFHA failed to correct the conditions because she is

19   white, and even retaliated against her for complaining.

20        McColm claims that as a result of the mistreatment, harassment, and discrimination

21   she suffered "extreme distress, fear, nightmares, cracked/sprained wrist, pain, asthma,

22   nausea, bites, lack of concentration and ability to function effectively, depression, physical

23   weakness, headaches, and general ill health and its related illnesses," in addition to

24   property damage.

25   **C.    Status of Discovery**

26        Because McColm has refused  to comply with discovery obligations and because

27   she failed to oppose the instant motions, there is no evidence in support of her claims other

28   than the allegations contained in her FAC.   In addition to the FAC, the only other very

limited information provided by plaintiff in the course of this lawsuit, which was submitted by

1  defendants in conjunction with the instant motions, were her responses to defendants'

2  interrogatories, and her deposition testimony.  However, neither is illuminating since they

3  both consist almost entirely of objections by McColm to very basic questions.[2]  For

4  example, several pages of McColm's deposition transcript consist of her objections to

5  defense counsel's question regarding her current address.  Instead of simply answering the

6  question, which calls for basic background information, McColm objects to the question on

7  relevance grounds, and then attempts to advise defense counsel which questions he may

8  and may not ask regarding her address.  *See* Deposition Transcripts at 40-45.

9       McColm has not complied with her discovery obligations with respect to either A-1 or

10 SFHA.  Her initial responses to A-1 interrogatories, which provided absolutely no factual

11 information and consisted entirely of boilerplate objections, spawned a motion to compel,

12 which Magistrate Judge Spero granted, ordering McColm to give more full and complete

13 responses.  McColm subsequently revised her responses, but those responses currently

14 included as an exhibit to A-1's motion papers, are only marginally better, and are still

15 replete with objections to requests for basic and relevant information.

16      McColm's responses to SFHA interrogatories are even worse than those with

17 respect to A-1, and contain *nothing* but boilerplate objections.  *See* Jewell Decl., Exh. D.

18 Judge Spero previously granted SFHA's motion to compel more full and complete answers,

19 which were originally due in April, and then in May pursuant to a subsequent extension

20 Judge Spero granted McColm, but, to date, McColm has not complied with the order

21 requiring further responses.

22      As a result, at the time of the hearing on the instant motions, defendants had seven

23 pending discovery-related motions, including motions to compel and for sanctions, before

24 Magistrate Judge Spero.  In this court's May 8, 2007 order denying McColm's request for a

25 stay and to disqualify Judge Spero, the court stayed all pending discovery motions until

26 these dispositive motions could be resolved.

27

28      [2]McColm "advises herself" during the course of the deposition not to answer many of
the questions posed by defense counsel.

**DISCUSSION**

**A.    Defendants' Motions**

SFHA and A-1 defendants filed separate motions for summary judgment, but A-1 joined in SFHA's motion.  Additionally, SFHA filed a separate motion to dismiss individual SFHA defendants Marshall and Ucciferri; and A-1 incorporated a motion to dismiss individual A-1 defendant Henry Johnson in its motion for summary judgment.

**1.    Motions to Dismiss**

**A.    Legal Standards**

Federal Rule of Civil Procedure 4(m) provides in part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The court's discretion to provide extensions under Rule 4(m) is not without limits. *See Efaw v. Williams*, 473 F.3d 1038, 1042 (9th Cir. 2007).  In cases where a plaintiff has not shown good cause for an extension, in considering whether an extension or dismissal is warranted, the court considers whether a permissive extension of time is warranted under the equities of the case, in addition to other factors including "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Id.* at 1042 (concluding that district court abused its discretion in denying defendant's motion to dismiss under Rule 4(m) where the length of delay in service was extraordinary).

**B.    SFHA Motion**

SFHA moves to dismiss defendants Tony Ucciferri and Beverly Marshall pursuant to Federal Rule of Civil Procedure 4(m) and this court's April 20, 2006 CMC order, memorialized in an April 24, 2006 pretrial order, that any defendants not served within 120 days of the CMC, Friday, August 18, 2006, would be dismissed.

In her November 19, 2003 FAC, McColm named Marshall, but did not name Ucciferri.  However, on August 17, 2006, McColm filed an "amendment to complaint" with the court, substituting Tony Ucciferri for "Doe 3."  Subsequently, on August 21, 2006, three

10

days after the deadline, McColm then filed "proofs of personal service," which consisted of only one proof, stating that on August 21, 2006, an unidentifiable person (signature illegible) personally served what appears to be "Tatum Grande (?) and Elizabeth Clark," at the San Francisco Housing Authority ("SFHA"), at 440 Turk Street, "on behalf of Tony Ucciferri."

More than a month later, on October 6, 2006, McColm filed another proof of service in which John Snavely, a registered process server attests that on September 22, 2006, he attempted to serve Marshall at the Berkeley Public Library, but was told she was unavailable.  He contends that he then effected "substitute service" on another library assistant, and then mailed the documents to Marshall on September 23, 2006, at the Berkeley Public Library.  Because McColm did not oppose the instant motions, there is no further information regarding her attempts at service on Marshall and Ucciferri.

SFHA argues that this court should dismiss defendants Marshall and Ucciferri under Rule 4(m), and based on McColm's failure to comply with the April 2006 CMC order.  They argue that because she has already been afforded a generous extension of time to complete service, no additional time is warranted.  In support, defendants cite to a declaration from SFHA assistant general counsel, Tim Larsen, who attests that sometime in October 2006, McColm also attempted to serve Ucciferri and Marshall by dropping copies of the pleadings on the ground at 1815 Egbert Street in San Francisco.  Neither Larsen nor the motion papers offer any detail regarding that address, except that McColm apparently believed that it was a work address for Ucciferri and Marshall.  Larsen also attests that McColm never personally served either Ucciferri or Marshall to date.

The court GRANTS SFHA's motion to dismiss Ucciferri and Marshall under Rule 4(m).  The evidence reflects that any service on Ucciferri and Marshall occurred more than three and one-half years after the filing of this case, and *after* August 18, 2006, the deadline set by the court.  Given the circumstances of this case, the court finds that the "extraordinary delay" and potential for prejudice to defendants and absence of any good cause articulated by McColm weigh in favor of dismissal under Rule 4(m).  *See Efaw*, 473 F.3d at 1042.

1          ## C.     A-1 Motion

2          In its motion for summary judgment, A-1 also moved for dismissal of security guard,

3   Henry Johnson, the only remaining individual A-1 guard in the lawsuit, based on untimely

4   service.  Johnson was served on August 18, 2006, the deadline set by the court at the April

5   2006 CMC.

6          Even though Johnson was served by the August 18, 2006 deadline, he argues that

7   service was nevertheless untimely based on the fact that McColm never applied for an

8   extension of a prior service deadline, that was set by the court on August 13, 2003.  He

9   argues that the passage of forty-four months from the time McColm filed the lawsuit until

10  the time he was served was extraordinary, and that McColm has never explained why she

11  was unable to serve Johnson in 2003.  A-1 also notes that there is no evidence that

12  Johnson tried to evade service or contributed to the delay, and that there is also no

13  evidence that he was aware of the suit.  In a supporting declaration from A-1 owner, Paula

14  Jones, she attests that A-1 no longer employs Johnson and that she is not aware of

15  Johnson's contact information.

16         The court GRANTS A-1's motion to dismiss Johnson under Rule 4(m).  As A-1

17  correctly notes, in setting the August 18, 2006 deadline, the court never guaranteed plaintiff

18  that it would not grant a defendant's Rule 4(m) motion to dismiss, even if the defendant

19  was served by that date.  Plaintiff made no showing of good cause as to the lack of service

20  on any defendant.  In fact, it was impossible to determine at that time which defendants

21  had been served as plaintiff claimed to have completed service although the docket

22  reflected otherwise.  The court simply advised plaintiff that it would dismiss any remaining

23  unserved defendants by that date without any further showing by her.  Given the fact that

24  plaintiff has offered no explanation for her inability to comply with this court's prior August

25  13, 2003 service order, and because the court finds that all of the factors present in the

26  *Efaw* case are present here- extraordinary delay, plaintiff's lack of a reasonable excuse,

27  lack of evidence that Johnson evaded service, and lack of evidence that defendant had any

28  knowledge of the lawsuit – the court dismisses Johnson under Rule 4(m).  *See* 473 F.3d at

1041.

1

**D.     *Sua Sponte* Dismissal**

2      Unlike Marshall and Ucciferri, SFHA did not specifically move for dismissal of

3   Stathem and Davis, who also remain unserved.  The same reasoning applies as that

4   above, and accordingly the court *sua sponte* dismisses Stathem and Davis under Rule

5   4(m).

6      In sum, the court dismisses pursuant to Rule 4(m):  SFHA individual defendants

7   Marshall, Ucciferri, Stathem, and Davis, and A-1 individual defendant Henry Johnson.

8      Accordingly, the only defendants that remain in the case are "SFHA defendants,"

9   which include SFHA, SFHC, Joretha Abrahams, Ignacius Lenore, Roberto Lechuga, Naja

10   Boyd, Jim Williams, Michael Roetzer, and Greg Fortner; and "A-1 defendants," which

11   includes only Paula Jones individually and d/b/a A-1 Security.

12      **2.     Motions for Summary Judgment**

13         **A.     Legal Standards**

14      Summary judgment is appropriate when there is no genuine issue as to material

15   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

16   Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

17   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

18   is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

19      A party seeking summary judgment bears the initial burden of informing the court of

20   the basis for its motion, and of identifying those portions of the pleadings and discovery

21   responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*

22   *v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

23   at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

24   than for the moving party.  On an issue where the nonmoving party will bear the burden of

25   proof at trial, the moving party can prevail merely by pointing out to the district court that

26   there is an absence of evidence to support the nonmoving party's case.  *Id.*  If the moving

27   party meets its initial burden, the opposing party must then set forth specific facts showing

28   that there is some genuine issue for trial in order to defeat the motion.  *See* Fed. R. Civ. P.

56(e); *Anderson*, 477 U.S. at 250.

"To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must view the evidence in the light most favorable to the non-moving party.  *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003).  The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.  *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law."  *Celotex*, 477 U.S. at 323.  Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial."  *Id.* at 322.

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n. 4 (9th Cir.1994). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir.1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed.R.Civ.P. 56).

It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir.1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir.2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).  Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so.  *Id.* at 1029. "The district court

1   need not examine the entire file for evidence establishing a genuine issue of fact."  *Id.* at

2   1031.

3                    **B.      Plaintiff's Claims**

4          The court has consolidated its analysis of defendants' motions for summary

5   judgment claim-by-claim as follows.  However, before addressing the specific claims, the

6   court notes that even if it were inclined to "scour the record" in light of plaintiff's failure to

7   oppose the motions, there is essentially no record to scour.  As discussed above, plaintiff

8   failed to comply with her discovery obligations and has failed to produce *any* evidence, in

9   discovery or in opposition to the motions, in support of her claims.

10                   **1.      Fair Housing Act**

11         Plaintiff alleges racial and disability discrimination, interference, and harassment

12   under the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988

13   ("FHAA"), 32 U.S.C. §§ 3601-19.

14         The FHAA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise

15   make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A)

16   that buyer or renter."  The statute further provides that "discrimination" includes "a refusal

17   to make reasonable accommodations in rules, policies, practices, or services, when such

18   accommodations may be necessary to afford such person equal opportunity to use and

19   enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); *see Giebeler v. M & B Assocs.*, 343 F.3d

20   1143, 1146-47 (9th Cir. 2003).

21         In order to state a discrimination claim under the FHAA for failure to reasonably

22   accommodate, plaintiff must allege that (1) she suffers from a handicap as defined by the

23   FHAA, (2) that the defendant or defendants "knew or reasonably should have known of"

24   plaintiff's handicap; (3) that "accommodation of the handicap 'may be necessary' to afford

25   [plaintiff] an equal opportunity to use and enjoy [her] dwelling;" and (4) that the defendant or

26   defendants "refused to make such accommodation."  *Giebeler*, 343 F.3d at 1147.

27         McColm presumably bases this claim on the SFHA's alleged failure to provide her

28   with a wheelchair-accessible unit, the comments that she alleges SFHA and A-1

     employees made, and the SFHA's alleged failure to respond to her complaints.

                                        15

1    SFHA argues that it is entitled to summary judgment because plaintiff has not

2    alleged and has not provided any evidence that SFHA refused to rent or to make its

3    property available to her based on her race and/or disability.  It contends that McColm has

4    presented only conclusory, self-serving accusations in support of the claim.  It notes that it

5    accommodated McColm's asthma by providing her with a Section 8 voucher so that she

6    could locate private housing to meet her special needs.  It also notes that to the extent that

7    McColm purports to sue on behalf of other disabled, white residents, she is no longer

8    "similarly situated" since she has not resided in SFHA public housing for four and one-half

9    years.

10    A-1 contends that it should be presumed that this claim applies only to SFHA.  It

11    argues that nevertheless, because there is no evidence that McColm rented property from

12    A-1 or its employees, it is entitled to summary judgment on this claim.  In support of its

13    arguments on this claim and others, A-1 submitted a declaration from its owner, Paula

14    Jones, who explains the relationship between A-1 and SFHA.  She attests that A-1 was an

15    independent contractor to SFHA, and that it was not an agent for SFHA.  She asserts that

16    A-1 provided its own personnel, uniforms and equipment, and training for its guards.

17    Based on the absence of evidence of discrimination and a failure to accommodate

18    as required by the FHAA, the court GRANTS summary judgment in favor of defendants.  In

19    addition to that absence of evidence, summary judgment in favor of A-1 is also warranted

20    given the absence of evidence that McColm rented property from A-1.

21                                        **2.        ADA/Rehabilitation Act**

22    McColm also claims discrimination based on disability and retaliation for complaints

23    of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

24    12203 et seq., and a violation of the Rehabilitation Act of 1973, section 504, claims two and

25    five of the FAC, respectively.

26    The ADA prohibits discrimination against individuals with disabilities.  42 U.S.C. §§

27    12101, et seq.  Title I of the ADA prohibits discrimination in employment.  42 U.S.C. §§

28    12111, et seq.  Title II prohibits discrimination in the provision of services and programs by

a public entity, and the provision of transportation to the general public.  42 U.S.C. §§

1   12131, et seq.  Title III prohibits discrimination in public accommodations.  42 U.S.C. §§

2   12181, et seq.

3       Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a

4   disability in the United States ... shall, solely by reason of her or his disability, be excluded

5   from the participation in, be denied the benefits of, or be subjected to discrimination under

6   any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a).

7       Title II of the ADA, modeled after Section 504, states that "no qualified individual with

8   a disability shall, by reason of such disability, be excluded from participation in or be denied

9   the benefits of the services, programs, or activities of a public entity, or be subjected to

10   discrimination by any such entity." 42 U.S.C. § 12132.  Because "[t]here is no significant

11   difference in analysis of the rights and obligations created by the ADA and the

12   Rehabilitation Act," courts consider Section 504 and ADA claims jointly.  *Zukle v. Regents*

13   *of University of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir.1999) (internal citations

14   omitted).

15       Under the Rehabilitation Act of 1973 and Title II, a plaintiff must establish that she is,

16   among other things: (1) an individual with a disability, (2) otherwise qualified, and (3)

17   subjected to discrimination solely by reason of the disability. *See Mustafa v. Clark County*

18   *Sch. Dist.*, 157 F.3d 1169, 1174 (9th Cir.1998) (citing 29 U.S.C. 794(a)).

19       SFHA notes that McColm has not specified which section of the ADA she is alleging

20   defendants violated, but it assumes that she is proceeding under Title II – which prohibits

21   discrimination in the provision of services and programs by a public entity, and the

22   provision of transportation to the general public.  It argues that plaintiff has not provided

23   any evidence that SFHA denied her services or participation in programs based on her

24   disability, or that it failed to make Sala Burton accessible to her.

25       Although McColm has not explicitly stated it, SFHA assumes that she is taking issue

26   with the alleged unavailability of a wheelchair-accessible unit.  It notes that at the time she

27   became a Sala Burton resident, McColm did not request such a unit.  Apparently after she

28   became a resident, she requested such a unit.  SFHA notes that McColm testified in her

deposition, though, that her particular unit was indeed wheelchair and scooter-accessible.

1    As for the retaliation portion of McColm's claim, SFHA notes that McColm apparently

2    argues that it issued a Section 8 voucher to her so that she could leave Sala Burton in

3    retaliation for her complaints and for filing the instant lawsuit.  It contends that McColm has

4    presented no evidence that SFHA issued the voucher to interfere with her assertion of her

5    rights.  It also notes that it is ironic that she is claiming retaliation since she is the one who

6    wanted to move out of Sala Burton, about which she had so many complaints, so that she

7    could use the vouchers for privately owned rental housing.

8    In terms of the Rehabilitation Act Claim, SFHA similarly argues that McColm has not

9    provided any evidence that she was denied benefits or excluded from participation in

10   federally funded programs because of her disability.  It contends that she has again

11   provided no admissible evidence of harassment or discrimination, or that she was treated

12   differently from other public housing tenants based on a disability.

13   A-1 again argues with respect to both the ADA and Rehabilitation Act claims that it

14   was not involved in the provision of housing services, is not a government entity, and had

15   no role in SFHA housing decisions, so it cannot be liable under the ADA.  It also argues

16   that to the extent that McColm claims it falsified alleged reports in conspiracy with the

17   SFHA to get her evicted, it cannot be liable for retaliation because there is no evidence that

18   McColm was ever evicted, that the SFHA used A-1 reports in reaching housing decisions

19   concerning McColm, that A-1 personnel understood McColm was exercising her ADA

20   rights, or that A-1 tried to interfere with her assertion of these rights.

21   The court GRANTS summary judgment in favor of the defendants.  As noted,

22   McColm's FAC does not specify the section of the ADA under which she asserts this claim.

23   However, it cannot be Title I, which concerns employment.  Nor does Title III apply,

24   because residential portions of housing developments do not fall within the bounds of the

25   ADA.  *See Indep. Housing Servs of San Francisco v. Fillmore Ctr. Assocs.*, 840 F.Supp.

26   1328, 1344 (N.D. Cal. 1993) (legislative history of ADA clarifies that residential facilities

27   such as apartments and condominiums do not constitute "public accommodations" within

28   the meaning of the Act).

1    Accordingly, it must be assumed that plaintiff intended to allege the claim under Title

2   II, and the motion must be granted because McColm has not produced any evidence that

3   defendants discriminated against her based on her disability.  Additionally, because plaintiff

4   cannot allege a claim of discrimination under the ADA and/or the Rehabilitation Act, which

5   constitutes the predicate for any claim of retaliation and/or interference under those

6   statutes, she also cannot assert a claim of retaliation because she has "opposed any act or

7   practice made unlawful" by the ADA, 42 U.S.C. § 12203(a); or a claim of interference,

8   coercion, or intimidation in the "exercise or enjoyment of, or on account of . . . having

9   exercised or enjoyed . . . any right granted or protected" by the ADA, *id.* § 12203(b).

10   Accordingly, the court GRANTS summary judgment in favor of defendants.

11                **3.      Privacy Act**

12    McColm also alleges a violation of the Privacy Act of 1974 and California's

13   Information Practices Act.  She alleges that although she has requested information

14   regarding the reports generated about her (presumably by SFHA and A-1) and has also

15   requested grievance proceedings, that the SFHA has refused to provide her with the

16   information and/or to remove the defamatory material from her file.

17                *Federal Act*

18    An individual may bring a civil action under the Privacy Act based on an agency's

19   disclosure of a challenged record, failure to amend a record on request, and/or failure to

20   comply with a request for access to records.  *See* 5 U.S.C. § 552a.  However, exhaustion

21   of administrative remedies before filing a Privacy Act lawsuit is mandatory, and a plaintiff

22   must include in her complaint allegations regarding exhaustion.  *See Diliberti v. U.S.*, 817

23   F.2d 1259 (7th Cir. 1987).  Additionally, the civil remedy provisions of the Privacy Act do

24   not apply against private individuals, state agencies, private entities, or state and local

25   officials.  *Dittman v. State of California*, 191 F.3d 1020, 1026 (9th Cir. 1999).

26    SFHA first notes that it is unclear whether the Privacy Act applies to it because it is

27   "a unique entity established by a combination of federal, state, and local actions."

28   However, assuming that the act does apply, it argues McColm has produced no evidence

1   that she made a request under the act or that SFHA withheld any records.  It also notes

2   that McColm has not alleged that she exhausted her administrative remedies.

3          A-1 argues that summary judgment should be granted against it because it is not a

4   federal agency.  It also notes that McColm did not allege exhaustion.

5          The court GRANTS summary judgment in favor of SFHA and A-1 on the basis that

6   McColm has not presented any evidence that she exhausted this claim, and has not

7   produced any evidence that she made a request under the Act or that SFHA withheld

8   records.  The court additionally GRANTS summary judgment in favor of A-1 because it is

9   not a federal agency.  Given that SFHA has asserted that it is a consortium of federal,

10   state, and local actors, the court declines to grant summary judgment in favor of SFHA on

11   this basis.

12                                          *State Act*

13          California's Information Practices Act of 1977, Cal. Civ. Code §§ 1798 et seq.,

14   prohibits state agencies from disclosing personal information, except in designated

15   situations.  *See* § 1798.24.  An individual harmed by an unauthorized disclosure may bring

16   a civil action against the agency.  *See* § 1798.45(c).  Additionally, a civil action may also be

17   brought against any person *other than a governmental employee* acting in the scope of his

18   or her employment, who intentionally discloses personal information obtained from

19   information maintained by a state agency or from records within a system of records

20   maintained by a federal agency.  5 Witkin, Summary of California Law, Torts § 667,

21   Information Practices Act (2005 & 2006 Suppl.).

22          As noted, McColm does not appear to be alleging an unauthorized disclosure, but

23   instead a failure to disclose information in conjunction with a request she allegedly made

24   and a failure to maintain accurate information.  Section 1798.45 of the Act provides:

25          An individual may bring a civil action against an agency whenever such
            agency does any of the following:

26

27                 (a) Refuses to comply with an individual's lawful request to inspect
                   pursuant to subdivision (a) of Section 1798.34.

28                 (b) Fails to maintain any record concerning any individual with such
                   accuracy, relevancy, timeliness, and completeness as is necessary to
                   assure fairness in any determination relating to the qualifications,

                                              20

1         character, rights, opportunities of, or benefits to the individual that may
2         be made on the basis of such record, if, as a proximate result of such
        failure, a determination is made which is adverse to the individual.

3         (c) Fails to comply with any other provision of this chapter, or any rule
4         promulgated thereunder, in such a way as to have an adverse effect
        on an individual.

5       SFHA argues that because the Act applies only to state, as opposed to local

6   agencies, and because it is not purely a state agency, it has no liability under the Act.

7   Alternatively, assuming that the Act applies, it argues that McColm has failed to provide any

8   evidence that she made a request under the Act for access to or amendment of her

9   records, or that such request was denied.  A-1 similarly argues that it is not a state agency

10   nor are its employees state actors.  Like SFHA, it also argues that McColm has failed to

11   provide any evidence that she made a request under the Act for access to or amendment

12   of her records, or that such request was denied.

13       Again, as with the federal Privacy Act, the court GRANTS summary judgment in

14   favor of SFHA and A-1 because McColm has not produced any evidence that she made a

15   request under the Act or that SFHA withheld records.  The court additionally GRANTS

16   summary judgment in favor of A-1 because it is not a state agency.  Again, given that

17   SFHA has provided that it is a consortium of federal, state, and local actors, the court

18   declines to grant summary judgment in favor of SFHA on this basis.

19                   **4.   § 1983**

20       McColm also alleges racial and disability discrimination, and retaliation based on the

21   exercise of her First Amendment rights under 42 U.S.C. § 1983.

22       Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges,

23   or immunities secured by the Constitution and laws' of the United States."  *Wilder v.*

24   *Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983

25   is not itself a source of substantive rights, but merely provides a method for vindicating

26   federal rights elsewhere conferred.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

27   To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right

28   secured by the Constitution or laws of the United States was violated and (2) that the

    alleged violation was committed by a person acting under the color of state law.  *See West*

1   *v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th

2   Cir. 1987).

3       In addition, an alleged violation of federal law may not be vindicated under § 1983

4   where "(1) the statute does not create an enforceable right, privilege, or immunity, or (2)

5   Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or

6   implicitly by imbuing it with its own comprehensive remedial scheme." *Buckley v. City of*

7   *Redding*, 66 F.3d 188, 190 (9th Cir. 1995).  A comprehensive scheme for the enforcement

8   of a statutory right creates a presumption that Congress intended to foreclose resort to

9   more general remedial schemes to vindicate that right. *Middlesex Co. Sewerage Auth. v.*

10   *Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981).

11       To the extent that McColm bases her § 1983 claim on alleged retaliation for exercise

12   of her First Amendment rights, her burden of proof is similar to that set out in cases where

13   an employer's adverse employment action is alleged to be due to a plaintiff's First

14   Amendment activities.  *See Sloman v. Tadlock* 21 F.3d 1462, 1469 n.10 (9th Cir. 1994).  In

15   order to establish a prima facie case of retaliation, a plaintiff must show that (1) she

16   engaged in protected speech; (2) the defendants took an adverse action against her; and

17   (3) the speech was a "substantial or motivating factor" for the adverse action.  *See Thomas*

18   *v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004).   In determining whether the

19   plaintiff's speech was a substantial or motivating factor for the adverse action, courts

20   examine three principal factors: (1) proximity in time between the protected speech and the

21   alleged retaliation; (2) the defendant's expressed opposition to the speech; and (3) other

22   evidence that the reasons proffered by the defendant for the adverse action were false and

23   pretextual.  *Keyser v. Sacramento Unified School Dist.*, 265 F.3d 741, 751-52 (9th Cir.

24   2001).

25       As for the alleged racial and disability discrimination, "[t]he Equal Protection Clause

26   of the Fourteenth Amendment commands that no State shall 'deny to any person within its

27   jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

28   similarly situated should be treated alike.*"  Lee v. City of Los Angeles*, 250 F.3d 668, 686-

87 (9th Cir. 2001) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a claim under

42 U.S.C. § 1983  for a violation of the Equal Protection Clause of the Fourteenth

Amendment a plaintiff must show that the defendants acted with an intent or purpose to

discriminate against the plaintiff based upon membership in a protected class." *Id.*  Proof

of a discriminatory intent or purpose is required to show an equal protection violation. *City

of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 193-94 (2003)

(claim could not survive summary judgment where there was no proof of discriminatory

intent by city which placed citizen-sponsored and allegedly racially-motivated referendum

on the ballot as required by the city's facially neutral charter and the referendum was not

enacted); *see also Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (plaintiff

must produce evidence sufficient to permit a reasonable trier of fact to find by a

preponderance of the evidence that the decision was motivated by the plaintiff's

membership in the protected class to avoid summary judgment).  Where the challenged

governmental policy is "facially neutral," proof of its disproportionate impact on an

identifiable group can satisfy the intent requirement only if it tends to show that some

invidious or discriminatory purpose underlies the policy.  *Village of Arlington Heights v.

Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66 (1976).  Because "the disabled do not

constitute a suspect class" for equal protection purposes, a governmental policy that

purposefully treats the disabled differently from the non-disabled need only be "rationally

related to legitimate legislative goals" to pass constitutional muster.  *Does 1-5 v. Chandler*,

83 F.3d 1150, 1155 (9th Cir.1996).

Presumably, McColm's disability and racial discrimination allegations that underlie

her section 1983 claim are the same as those described above in this order.  Additionally,

the First Amendment retaliation allegations appear to be based on alleged retaliation,

including but not limited to an eviction notice and a failure to provide her with a wheelchair-

accessible unit, in response to her complaints about property conditions, tenant conduct,

and SFHA and A-1 employee conduct.

SFHA argues that McColm has not produced any evidence that it acted under color

of state law, and that she has not produced evidence of nor specified what speech

protected by the First amendment was curtailed.  Additionally, it contends that she has not

1  produced even a shred of evidence in support of the discrimination allegedly based on her

2  race and/or disability.

3         A-1 argues that there is no evidence that it was acting under color of state law, and

4  that McColm has not presented any evidence that there was an agreement or meeting of

5  minds between A-1 and a state actor.  *Radcliffe v. Rainbow Construction*, 254 F.3d 772

6  (9th Cir. 2001); *Fonda v. Gray*, 707 F.2d 435.  In support, owner Paula Jones has attested

7  in a declaration that there was never any such conspiracy or agreement between A-1 and

8  SFHA.  Additionally, A-1 also argues that even if McColm had evidence that one of its

9  guards did in fact violate her rights, there is no vicarious liability on A-1's behalf.

10        The court GRANTS summary judgment in favor of defendants because McColm has

11 not presented any evidence to demonstrate that she engaged in protected speech, or that

12 the defendants took adverse actions against her that were substantially motivated by the

13 speech.  Additionally, McColm has also failed to produce any evidence of discriminatory

14 intent or purpose based on her race and/or disability.  Finally, the court additionally

15 GRANTS summary judgment in favor of A-1 because there is no evidence that it was acting

16 under color of state law.

17                    **5.    "violation of Code of Federal Regulation, HUD"**

18        McColm alleges a "violation of Code of Federal Regulation, HUD," but failed

19 to specify either in her FAC or in discovery responses the particular regulation that was

20 allegedly violated.  Accordingly, defendants argue that the claim fails because McColm has

21 not specified the basis for this claim nor has she produced any evidence in support of the

22 claim.  The court agrees with both grounds, and GRANTS summary judgment in favor of

23 defendants.

24                    **6.    "breach of landlord's duty to warn under California law"**

25        McColm alleges in her FAC that "[d]efendants' policies and practices have been and

26 are now in violation of its duty under California law to warn current and prospective

27 residents of San Francisco public housing developments about known dangers and

28 reasonable forseeable harassment and crimes by third parties."  Par. 121.  It appears to

the court that McColm is alleging public entity liability for maintaining a dangerous condition

of public property under the California Tort Claims Act, based on the SFHA's alleged failure to respond to her complaints about SFHA property, including the lack of ventilation, smoking and drug use by tenants, vandalism of the property, and other issues related to the elevator and windows.

The liability of a public entity for property defects is governed by the Tort Claims Act, at Cal. Govt Code §§ 830 to 835.4.   The elements of a cause of action for a dangerous condition on public property are (1) a dangerous condition, (2) either created by the public entity or actually or constructively known to the entity, with sufficient time before the injury for the entity to have taken remedial action, (3) a proximate causal connection between the condition and the injury sustained, and (4) a reasonably foreseeable risk that the kind of injury that occurred would result from the dangerous condition.  *People ex rel. Department of Transp. v. Superior Court*, 5 Cal.App.4th 1480, 1485 (Cal. Ct. App.1992); *Dominguez v. Solano Irrigation District*, 228 Cal.App.3d 1098, 1102 (Cal. Ct. App. 1991).

The public entity must be the owner or in control of the property at the time of the injury.  *Carson v. Facilities Dev. Co.*, 36 Cal.3d 830, 840-41 (Cal. 1984).  Before liability can be imposed on a public entity, the entity must be in a position to protect against or warn of the danger. *Tolan v. State ex rel. Department of Transp.*, 100 Cal.App.3d 980, 984, (Cal. Ct. App.1979).  A "dangerous condition" is "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  Government Code § 830(a); *see Huffman v. City of Poway*, 84 Cal.App.4th 975, 992 (Cal. Ct. App. 2000). The condition must be one that creates a hazard to a person who foreseeably would use the property or adjacent property with due care.  *Id.*  Proof of knowledge or negligence is part of the plaintiff's burden; however, "constructive notice may be imputed if it can be shown that an obvious danger existed for an adequate period of time before the accident to have permitted the [public entity], in the exercise of due care, to discover and remedy the situation...."  *Carson*, 36 Cal.3d at 842-44.

1    The courts will not ascribe liability to a dangerous condition of public property solely

2  on the basis of the conduct of a third party.  *Zelig v. County of Los Angeles*, 27 Cal.4th

3  1112, 1134-41 (Cal. 2002).  A plaintiff may be able to state a cause of action arising from

4  injuries caused by criminal assailants if the occurrence of the injuries can be linked to a

5  physical characteristic of the public property, such as insufficient lighting or construction

6  and maintenance in such a fashion as to encourage illegal activity.  *Slapin v. Los Angeles*

7  *Int'l Airport*, 65 Cal.App.3d 484 (Cal. Ct. App 1976).  In sum, a governmental entity may be

8  liable for injuries caused by a combination of a dangerous condition of public property and

9  the wrongful acts of third parties, and a public defendant may not successfully defend that

10  the plaintiff's injuries were caused by the wrongful criminal act of a third party, when the

11  basis of alleged negligence is that the defendant created a reasonably foreseeable risk of

12  the third party criminal conduct that occurred.  *Id.*

13    SFHA argues that plaintiff has provided no evidence to support her allegations of

14  unsafe conditions; nor has she provided any evidence that she was harmed by the

15  allegedly unsafe conditions.  It also argues that she has not shown that the SFHA breached

16  its duty of care.  Moreover, SFHA contends that since McColm no longer lives in public

17  housing, she lacks standing to seek injunctive and declaratory relief to correct its allegedly

18  unsafe practices.

19    A-1 again argues that because there is no evidence of a landlord-tenant relationship

20  between it and plaintiff, it cannot be liable on this claim.

21    The court GRANTS summary judgment in favor of both defendants based on

22  McColm's failure to produce evidence of any of the following elements required for the

23  claim:  (1) a dangerous condition, (2) either created by the public entity or actually or

24  constructively known to the entity, with sufficient time before the injury for the entity to have

25  taken remedial action, (3) a proximate causal connection between the condition and the

26  injury sustained, and (4) a reasonably foreseeable risk that the kind of injury that occurred

27  would result from the dangerous condition.  Additionally, the court GRANTS summary

28  judgment in favor of A-1 based on the absence of evidence demonstrating a landlord-

tenant relationship between it and McColm.

### 7.   Unruh Act

McColm also alleges a violation of California's Unruh Act, §§ 51-52 et seq., but as with many of her other claims, provides absolutely no detail or description regarding the basis for the allegation.

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  In 1992, the Unruh Act was amended to provide that "[a] violation of the right of any individual under the Americans with Disabilities Act (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ. Code § 51(f).

The California Supreme Court has held that the Unruh Act prohibits only intentional discrimination.  *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175 (Cal. 1991) ("[W]e hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.").  However, *Harris* was decided prior to the 1992 amendment that added § 51(f). Thus, the question arose as to whether, as a result of the 1992 amendment, a showing of intentional discrimination was required in cases where the plaintiff predicated his Unruh Act claim on a showing that the defendant violated the ADA.  In 2004, the Ninth Circuit held that "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

McColm's Unruh Act claim appears to be based on the same allegations of racial and disability harassment and discrimination described above, including the SFHA's alleged failure to provide her with a wheelchair-accessible unit, and also its allegedly passing her over for a particular wheelchair-accessible unit based on her race.     SFHA argues that McColm has not presented any evidence to support her claim.  It also argues that she has not shown a denial of full and equal accommodations within the meaning of

1    the Act.  A-1 again argues that because there is no evidence that it provided

2    accommodations to McColm, it cannot be liable under the Act.

3        The court GRANTS summary judgment in favor of defendants since McColm has not

4    presented evidence that they intentionally discriminated against her on the basis of her

5    race, that she was discriminated against, intentionally or otherwise, on the basis of her

6    disability, and/or that SFHA denied her fair and equal accommodations.  Additionally, the

7    court GRANTS summary judgment in favor of A-1 because it cannot be liable under the

8    Unruh Act since it did not provide McColm with accommodations.

9                    **8.    "breach of contract and covenant of good faith and fair**

10                           **dealing and occupancy policy"**

11       In support of this claim, McColm alleges that "SFHA breached the terms of its rental

12   agreement with [her] and violated the notice requirements for change of the grievance

13   procedures under the SFHA's occupancy policies."

14       A claim for damages for breach of contract is comprised of the following elements:

15   (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

16   breach, and (4) the resulting damages to plaintiff. *Armstrong Petroleum Corp. v. Tri-Valley*

17   *Oil & Gas Co.* 116 Cal.App.4th 1375, 1391, fn. 6. (Cal. Ct. App. 2004).

18       To prove a claim for breach of the covenant of good faith and fair dealing, plaintiff

19   must establish:  (1) the existence of a contract; (2) the plaintiff did all, or substantially all of

20   the significant things the contract required; (3) the conditions required for the defendant's

21   performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to

22   receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's

23   conduct. *See* CACI No. 325.  Breach of a specific contractual provision is not a prerequisite

24   to asserting this cause of action.  *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-350

25   (2000).  However, "[i]t is universally recognized the scope of conduct prohibited by the

26   covenant of good faith is circumscribed by the purposes and express terms of the contract.

27   [U]nder traditional contract principles, the implied covenant of good faith is read into

28   contracts 'in order to protect the express covenants or promises of the contract, not to

     protect some general public policy interest not directly tied to the contract's purpose." *Id.*  In

1   essence, the covenant is implied as a supplement to the express contractual covenants, to

2   prevent a contracting party from engaging in conduct which (while not technically

3   transgressing the express covenants) frustrates the other party's rights to the benefits of

4   the contract.  *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th

5   1026, 1031-1032 (Cal. Ct. App. 1992).  The covenant thus cannot  "be endowed with an

6   existence independent of its contractual underpinnings."  *Id.*  It cannot impose substantive

7   duties or limits on the contracting parties beyond those incorporated in the specific terms of

8   their agreement.  *Id.*

9        SFHA argues that McColm has not provided evidence supporting a breach of

10  contract claim because she has not produced evidence that she fully performed the rental

11  contract or that she was excused from performing, that SFHA failed to fully perform, and

12  that she was harmed by the breach.  As for the claim for breach of covenant of good faith

13  and fair dealing, which SFHA contends should be a separate claim, it again argues that

14  McColm has provided no evidence in support of the elements of such a claim.  It further

15  asserts that it is not clear what McColm is alleging the SFHA did to interfere with her right

16  to receive the benefit of her rental agreement.

17       A-1 argues that it cannot be held liable on this claim because there is no evidence of

18  a contract between it and McColm, and that for this reason, the breach of covenant claim

19  also fails.

20       The GRANTS summary judgment in favor of defendants on both the breach of

21  contract and breach of covenant of good faith and fair dealing claims because McColm has

22  not produced evidence that she performed or was excused from performing under the

23  contract with SFHA, or that SFHA breached any of its duties under the contract.

24  Additionally, the court GRANTS summary judgment in favor of A-1 on both claims because

25  there is no evidence of a contract between it and McColm.

26                    **9.    Negligence**

27       McColm alleges that defendants were negligent in their duty to maintain the

28  premises in a manner free of unlawful discrimination, and that they were negligent in their

    hiring, training, supervision, and discipline of their employees.  She asserts specifically that

                                        29

they were negligent in training their employees regarding federal and state fair housing laws, and that they failed to hire employees familiar with such laws.  She contends that as a result of defendants' negligence, she suffered a "loss of housing opportunities, violation of her civil rights, bodily injury, humiliation and physical and emotional distress and property damage."

The California Tort Claims Act states, "[e]xcept as otherwise provided by statute[,] ... [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a); *see also Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175 (Cal. 2003). The intent of the Tort Claims Act is to confine potential governmental liability, not to expand it.  *Zelig v. County of Los Angeles*, 27 Cal.4th 1112 (Cal. 2002).

In *Eastburn*, the California Supreme Court determined that direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care.  *Eastburn* involved a tort action arising out of alleged negligence on the part of three public agencies responsible for providing "emergency dispatch services for 911 callers."  *Eastburn*, 7 Cal.Rptr.3d at 552.  The complaint alleged that the public agencies were negligent in the manner in which dispatchers were trained and responded to the calls, and how the guidelines for the handling of 911 calls were promulgated.  *Id.*  It was further alleged that plaintiff's injuries were either caused or exacerbated by this negligence. *Id.*  The California Supreme Court held that plaintiffs failed to identify an independent statutory basis for imposing liability on the public agencies as required by Government Code § 815.  *Id.* at 660.  Thus, the public agencies were immune for the acts or omissions of the 911 emergency dispatchers in their employ.  *Id.* at 661. The *Eastburn* court reasoned that the common law and general tort principles embodied in California Civil Code § 1714, which imposes a duty to act with reasonable care, are insufficient to create direct liability and bypass the immunity of Government Code § 815. *Id.*; *see also Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1112 (Cal. Ct. App. 2004).

With respect to negligence by a public employee, such an employee is generally "liable for injury caused by his act or omission to the same extent as a private person."  Cal.

1   Gov't Code § 820(a).  Furthermore, Government Code § 815.2 "expressly makes the

2   doctrine of respondeat superior applicable to public employers."  *Hoff*, 19 Cal.4th at 932.  A

3   "public entity is liable for injury proximately caused by an act or omission of an employee of

4   the public entity within the scope of his employment if the act or omission would, apart from

5   this section, have given rise to a cause of action against that employee or his personal

6   representative." Cal. Gov't Code § 815.2(a). Thus, § 815.2 "makes a public entity

7   vicariously liable for its employee's negligent acts or omissions within the scope of

8   employment." *Eastburn*, 31 Cal.4th at 1180; *Hoff*, 19 Cal.4th at 932.  However, "liability of

9   the employer only attaches if and when it is adjudged that the employee was negligent,"

10  and, although "public entities always act through individuals, that does not convert a claim

11  for direct negligence into one based on vicarious liability." *Munoz*, 120 Cal.App.4th at 1113.

12          SFHA cites to controlling California law in support of the principle that a public entity

13  is not liable for injury unless provided by statute, and argues that McColm has failed to

14  establish a statutory duty in connection with her negligence claim.  It also argues that she

15  has failed to allege how any breach proximately caused any harm to her.  However,

16  assuming that she has alleged sufficient facts to state a claim, SFHA argues that she has

17  produced no competent evidence in support of the claim.

18          A-1 does not address this claim separately in its motion papers, but responds simply

19  that it can not be liable for acts not shown to be in the course and scope of its employees'

20  employment

21          The court GRANTS summary judgment in favor of defendants because McColm has

22  not produced any evidence in support of her negligence claim.  Additionally, summary

23  judgment is appropriate because McColm has failed to establish a statutory duty in

24  connection with this claim. *See Eastburn*, 7 Cal.Rptr.3d at 560.

25                          **10.     State Law Tort Claims**

26          As noted, in addition to the ten claims above, McColm also alleges what has been

27  referred to as a "grab bag" of state law tort claims, listed in paragraph 130 of the FAC, at a-

28  j. A-1 addressed some of these claims separately, while SFHA, for the most part, includes

    a more general discussion of the claims as a whole.

1 | *negligence and gross negligence*

2 | McColm has offered no distinction between this "claim" and the negligence claim

3 listed above.  Because the legal standards and conclusion set forth with respect to the

4 previously discussed negligence claim are equally applicable here, the court GRANTS

5 summary judgment in favor of defendants.

6 | *violation of California Bus. & Prof. Code § 17200 for*

7 | *unfair and fraudulent business practices*

8 | Under the Unfair Competition Act (UCA) found at Business and Professions Code

9 section 17200 et seq., any unlawful, unfair or fraudulent business act or practice is deemed

10 to be unfair competition.  Section 17200 defines unfair competition as including any

11 "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

12 misleading advertising and any act prohibited by Chapter 1 (commencing with Section

13 17500) . . . of the Business and Professions Code."

14 | Government Code section 815 declares that "[e]xcept as otherwise provided by

15 statute:  (a) A public entity is not liable for an injury, whether such injury arises out of an act

16 or omission of the public entity or a public employee or any other person."  The statute

17 amounts to a legislative declaration that governmental immunity from suit is the rule and

18 liability the exception.  *Podolsky v. First Healthcare Corp.,* 50 Cal.App.4th 632, 647 (Cal.

19 Ct. App. 1996); *Harshbarger v. City of Colton,* 197 Cal.App.3d 1335, 1339 (Cal. Ct. App.

20 1988).  Thus, in the absence of some constitutional requirement, public entities may be

21 liable only if a statute declares them to be liable.  *Id.*  California courts have held that

22 "[b]ecause there is no statute making public entities liable under the UCA, the general rule

23 of governmental immunity must prevail."  *Trinkle v. California State Lottery,* 71 Cal.App.4th

24 1198, 1202 (Cal. Ct. App. 1999).  Although "persons" who engage in unfair competition

25 may be sued for damages and injunctive relief (§§ 17203-17205), a "public entity"

26 (Gov.Code, § 811.2) is not a "person" within the meaning of the Unfair Practices Act.  *Id.*

27 | Although A-1 has not separately addressed this issue, as noted, it joins in SFHA's

28 motion.  SFHA correctly notes that McColm has failed to allege the essential elements of

1   any of the claims; nor does she plead any specific facts in support of them; nor has she

2   produced any competent admissible evidence in support of her claims.

3       The court GRANTS summary judgment in favor of defendants because McColm has

4   produced no evidence in support of her UCA claim.  Additionally, to the extent that SFHA

5   constitutes a public entity, the California courts have held that it may not be held liable

6   under the UCA.

7                                   *fraud*

8       Plaintiff also asserts a claim of fraud.  The elements plaintiff must prove include: "(a)

9   misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of

10  falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and

11  (e) resulting damage." *Lazar v. Superior Court,* 12 Cal. 4th 631, 638 (1996).

12      Generally, the Federal Rules of Civil Procedure require that a plaintiff in federal court

13  give a short, plain statement of the claim sufficient to put the defendant on notice.  See

14  Fed. R. Civ. P. 8(a).  However, Rule 9 imposes a particularized pleading requirement on a

15  plaintiff alleging fraud or any claim premised on fraud.  See Fed. R. Civ. P. 9(b) (in actions

16  alleging fraud, "the circumstances constituting fraud or mistake shall be stated with

17  particularity").  Under Rule 9(b), the complaint must allege specific facts regarding the

18  fraudulent activity, such as the time, date, place, and content of the alleged fraudulent

19  representation, how or why the representation was false or misleading, and in some cases,

20  the identity of the person engaged in the fraud.  *Yourish v. California Amplifier*, 191 F.3d

21  983, 992-93 (9th Cir. 1999)

22      Again, it is unclear which allegations plaintiff asserts underlie her fraud claim and/or

23  which apply to which of the defendants.  Assuming that plaintiff's fraud claim is based upon

24  her allegations regarding defendants' generation of false reports about her and/or alleged

25  misrepresentation regarding what type of unit she would receive at Sala Burton, she still

26  has presented absolutely no evidence in support of this claim.  Moreover, her non-

27  compliance with Rule 9's requirement for particularity makes it impossible to determine

28  even which defendant is accused of fraud.  Accordingly, the court GRANTS defendants'

    motions for summary judgment.

1                                   *intentional infliction of emotional distress*

2        Plaintiff asserts a claim of intentional infliction of emotional distress.  The elements

3 of a claim for intentional infliction of emotional distress are (1) extreme and outrageous

4 conduct by the defendant with the intention of causing, or reckless disregard of the

5 probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

6 emotional distress; and (3) actual and proximate causation of the emotional distress by the

7 defendant's outrageous conduct.  *Cervantes v. J.C. Penney Co.*, 24 Cal.3d 579, 593

8 (1979); *see also Christensen v. Superior Court*, 54 Cal.3d 868, 904-05 (1991).

9        Severe emotional distress means "emotional distress of such substantial quantity or

10 enduring quality that no reasonable [person] in a civilized society should be expected to

11 endure it."  *Butler-Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 1226 (2005).  While the

12 outrageousness of a defendant's conduct normally presents an issue of fact to be

13 determined by the trier of fact, the court may determine, in the first instance, whether the

14 defendant's conduct may reasonably be regarded as so extreme and outrageous as to

15 permit recovery.  *Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883 (1989).

16 Behavior may be considered outrageous if a defendant: (1) abuses a relation or position

17 which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is

18 susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with

19 the recognition that the acts are likely to result in illness through mental distress.  *Kiseskey*

20 *v. Carpenters' Trust for So. California*, 144 Cal.App.3d 222 (1983).

21        Again, as with the fraud claim, it is unclear which allegations plaintiff asserts underlie

22 her claim for intentional infliction of emotional distress and/or which of those facts apply to

23 which of the defendants.   However, assuming that the claim is based on some of the acts

24 detailed above, including the harassment, glue in the locks, false incident reports, and

25 alleged unlawful entry, McColm has nevertheless failed to present any evidence that the

26 alleged incidents occurred.  Nor has she alleged sufficient evidence of a nexus between the

27 alleged conduct and her injuries.  Therefore, the court GRANTS summary judgment in

28 favor of defendants on this claim as well.

1        *negligent infliction of emotional distress*

2        Plaintiff asserts a claim of negligent infliction of emotional distress.  In California,

3  there is no independent tort of negligent infliction of emotional distress.  *See Potter v.*

4  *Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 981 (1993).  Negligent infliction of emotional

5  distress is merely a form of the tort of negligence.  *Huggins v. Longs Drug Stores*

6  *California, Inc.*, 6 Cal.4th 124, 129 (1993).

7            The negligent causing of emotional distress is not an independent tort, but the
             tort of negligence.  The traditional elements of duty, breach of duty,
8            causation, and damages apply. [¶] Whether a defendant owes a duty of care
             is a question of law.  Its existence depends upon the foreseeability of the risk
9            and a weighing of policy considerations for and against imposition of liability.

10 *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588 (1989) (citations

11 and quotations omitted).

12        Thus, to establish a claim for negligent infliction of emotional distress, the plaintiff

13 must set forth each of the elements of negligence, as described above: (1) duty; (2)

14 negligent breach of duty; (3) legal cause; and (4) damages caused by the negligent breach.

15 *Friedman v. Merck & Co.*, 107 Cal.App.4th 454, 463 (Cal. Ct. App. 2003).  "Unless the

16 defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is

17 an object, recovery is available only if the emotional distress arises out of the defendant's

18 breach of some other legal duty and the emotional distress is proximately caused by that

19 breach of duty."  *Gu v. BMW of North America, LLC*, 132 Cal.App.4th 195 (Cal. Ct. App.

20 2005).

21        Because defendants are entitled to summary judgment on plaintiff's claim for

22 negligence, the court likewise GRANTS summary judgment as to this claim.

23                                    *invasion of privacy*

24        Under California common law, the right to privacy is generally analyzed under four

25 categories of wrongs or types of invasion, including: intrusion into private affairs; public

26 disclosure of private facts; placing the plaintiff in a false light; and appropriation of the

27 plaintiff's name or likeness.  *See* 5 Witkin, Summary of California Law, Torts § 651,

28 Invasion of Privacy.  Additionally, the California Constitution lists "privacy" among the

fundamental "inalienable rights" of all people, and confers a right of action beyond the

1  scope of decisional law on the common law tort action.  *Id.; see also Porten v. University of*

2  *San Francisco*, 64 Cal.App.3d 825 (Cal. Ct. App. 1976).

3       Like the other state law tort claims, the factual basis for this claim is unclear.  It

4  appears to be based on allegations that defendants misrepresented events and plaintiff's

5  culpability in incident reports.

6       Again, though, McColm has produced absolutely no evidence that defendants

7  publicly disclosed private facts about her or placed her in a false light, and summary

8  judgment is therefore GRANTED in favor of defendants.

9                          *spoliation of evidence*

10      Defendants correctly note that there is no tort of intentional spoliation of evidence

11  under California law.   *Temple Community Hospital v. Superior Court,* 20 Cal.4th 464 (Cal.

12  1999); *Cedars-Sinai Medical Center v. Superior Court* 18 Cal.4th 1, 74 Cal.Rptr.2d 248

13  (Cal. 1998).  Accordingly, the court GRANTS summary judgment in favor of defendants on

14  this claim.

15                          *assault and battery*

16      Plaintiff asserts a claim of assault of assault and battery.  Specifically, she claims

17  that three of the remaining individual SFHA defendants assaulted her, including Jorethra

18  Abrahams, Roberto Lechuga, and Ignacius Lenore.  FAC, par. 35.  As for A-1, all of the

19  individual security guards have been dismissed from the case.

20       "Assault" is generally defined as "a demonstration of an unlawful intent by one

21  person to inflict immediate injury on the person of another then present."  *Lowry v.*

22  *Standard Oil Co. of Cal.*, 63 Cal.App.2d 1, 5-6 (Cal. Ct. App. 1944).  The California Civil

23  Code does not define "assault," but rather incorporates the definition that appears in the

24  California Penal Code.  Under that definition, "assault" is "an unlawful attempt, coupled with

25  a present ability, to commit a violent injury on the person of another."  Cal. Penal Code §

26  240.

27      The elements of a civil battery are: (1) Defendant intentionally did an act which

28  resulted in a harmful or offensive contact with the plaintiff's person; (2) Plaintiff did not

consent to the contact; and (3) The harmful or offensive contact caused injury, damage,

1   loss or harm to the plaintiff. *Piedra v. Dugan*, 123 Cal.App.4th 1483, 1495 (Cal. Ct. App.

2   2004).

3   Once again, plaintiff has presented no evidence in support of her assault and battery

4   claim(s), and for this reason, the court GRANTS summary judgment in favor of defendants.

5

6   *property damage*

7   Again, it is not clear to the court what the factual, or even legal basis, is for this

8   claim.  In her A-1 interrogatory responses, plaintiff alleged that she suffered personal

9   property damage to her locks, food, clothing, rug, and additional "personal property," in the

10   amount of $500.  Stilson Decl., Exh. 3, at p.32.

11   The court thus assumes that McColm she is alleging a claim for vandalism.  Under

12   the California Penal Code, "vandalism" is defined as the malicious defacing, damaging, or

13   destruction of real or personal property belonging to another.  Cal. Penal Code § 594; *see*

14   *In re Leanna W.*, 120 Cal.App.4th 735, 743 (Cal. Ct. App. 2004).

15   As with the above state law tort claims (and all of the claims in for that matter),

16   plaintiff has presented no evidence in support of her property damage claim, and for this

17   reason, the court GRANTS summary judgment in favor of defendants.

18   *violation of Cal. Civil Code § 1950 et seq*

19   California Civil Code section 1950 provides:

20   LETTING PARTS OF ROOMS FORBIDDEN.  One who hires part of a room
       for a dwelling is entitled to the whole of the room, notwithstanding any
21   agreement to the contrary; and if a landlord lets a room as a dwelling for more
       than one family, the person to whom he first lets any part of it is entitled to the
22   possession of the whole room for the term agreed upon, and every tenant in
       the building, under the same landlord, is relieved from all obligation to pay
23   rent to him while such double letting of any room continues.

24   The FAC is silent regarding the factual basis for this claim, but given the statute cited

25   by McColm, the court must assume that she is accusing of SFHA of letting one of its units

26   to more than one family.

27   A-1 argues that because it has no landlord-tenant relationship with McColm, it can

28   not be held liable under § 1950.  SFHA argues that McColm has not plead any facts

1  supporting such a violation, and that even if she could, there is no authority that the section

2  applies to public entities.

3        Again, because plaintiff has presented no evidence in support of this claim, the court

4  GRANTS summary judgment in favor of defendants.

5                                     *conspiracy*

6        Plaintiff alleges throughout the statement of facts in her FAC that defendants all

7  conspired to do the acts complained of.

8        However, the court GRANTS summary judgment in favor of defendants because

9  civil conspiracy is not a separate and distinct cause of action under California law.

10 *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228

11 (9th Cir. 1997).  Additionally, defendants have introduced evidence, which McColm failed to

12 rebut, that no such conspiracy existed.

13                            **11.    Other Claims**

14       While not specifically alleging them as claims, McColm also vaguely references

15 violations of "state fair housing laws" throughout her FAC.  However, because the

16 references are vague and conclusory, because it is unclear what state code provisions she

17 is referring to, and because she has introduced no evidence in support of any such claims,

18 the court GRANTS summary judgment in favor of defendants on those claims as well.

19                     **3.    Pending Discovery Motions**

20       The pending discovery and discovery sanctions motions, recently stayed by the

21 court, are DENIED without prejudice as moot.

22                                **CONCLUSION**

23       For the reasons set forth above, the court DISMISSES defendants Beverly Marshall,

24 Tony Ucciferri, Henry Johnson, Gloria Stathem, Ronnie Davis, and Does 1 and 2, and 4-

25 150 pursuant to Federal Rule of Civil Procedure 4(m).

26       The court DISMISSES Gracie Smith, Mr. Smith, and David Gonzalez as plaintiff has

27 never sought to obtain a default judgment against them and given the record the court has

28 just reviewed, it is not likely she could have obtained such a judgment in any event.

1    The court GRANTS summary judgment in favor of all remaining defendants,

2    including the individual defendants and business and public entity defendants, as to all

3    claims set forth in plaintiff's FAC.

4    In addition to the pending discovery motions, the docket numbers for which are too

5    numerous for this court to ascertain, this order fully adjudicates the motions listed at Nos.

6    161, 178, and 185 of the clerk's docket for this case and terminates all other pending

7    motions.  The clerk shall close the file.

8

9    **IT IS SO ORDERED**.

10

11   Dated: May 29, 2007

12

13

14   _____

15   PHYLLIS J. HAMILTON
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28